IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LAQUITA POWELL,
      Petitioner,

vs.                             Case No.:  3:17cv140/LAC/EMT

FLORIDA DEPARTMENT OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 17).  Petitioner filed a reply (ECF No. 19).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 17).[1]  Petitioner was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 2013-CF-2632, with one count of trafficking in amphetamine or methamphetamine (200 grams or more) (Ex. A at 23).   On August 8, 2014, Petitioner entered a Plea and Sentencing Agreement, pursuant to which she agreed to enter a no contest plea to a reduced charge, in exchange for a mandatory minimum sentence of seven (7) years in prison (Ex. A at 110–14, 157–64).  The same day, the court accepted the plea, adjudicated Petitioner guilty, and sentenced her to a mandatory term of seven (7) years in prison, with jail credit of 278 days (*id.* at 117–22).   Petitioner filed a motion to reduce sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (*id.* at 168–70). The court summarily denied the motion (*id.* at 173).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D14-4119 (Ex. A at 142–43).  Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that the appeal was frivolous (Ex. B).   The First DCA provided Petitioner an opportunity to file a pro se initial brief (*see* Ex. C), but Petitioner did not do so.   The First DCA affirmed the judgment per curiam without written opinion on March 19, 2015, with the mandate issuing April 14, 2015 (Ex. D).  <u>Powell v. State</u>, 160 So. 3d 416 (Fla. 1st DCA 2015) (Table).

On May 1, 2015, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. E at 1–5).  In an order rendered May 13, 2015, the state circuit court dismissed the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.* at 8–9).  Petitioner filed an amended motion on November 24, 2009 (*id.* at 10–17).  In an order rendered July 6, 2015, the state circuit court again dismissed the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.* at 20–21).  Petitioner filed a second amended motion on August 31, 2015 (*id.* at 22–28).  The state circuit court granted a limited evidentiary hearing on two of Petitioner's three claims, and appointed counsel to

represent her (*id.* at 50–52).  The hearing was held on May 2, 2016 (*id.* at 58–78).  On June 10, 2016, the state circuit court issued a final order denying the second amended Rule 3.850 motion (*id.* at 79–83).  Petitioner appealed the decision to the First DCA, Case No. 1D16-2980 (Ex. E at 104–05, Ex. F).  The First DCA affirmed the decision per curiam without written opinion on January 3, 2017, with the mandate issuing January 31, 2017 (Ex. H).  <u>Powell v. State</u>, 222 So. 3d 1210 (Fla. 1st DCA 2017) (Table).

Petitioner filed the instant federal habeas action on February 23, 2017 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the <u>Williams</u> framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established"

only when a Supreme Court holding at the time of the state court decision embodies

the legal principle at issue.  <u>Thaler v. Haynes</u>, 559 U.S. 43, 47, 130 S. Ct. 1171, 175

L. Ed. 2d 1003 (2010); <u>Woods v. Donald</u>, — U.S. —, 135 S. Ct. 1372, 1376, 191 L.

Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this

Court's decisions." (internal quotation marks and citation omitted)).

    After identifying the governing legal principle(s), the federal court determines

whether the state court adjudication is contrary to the clearly established Supreme

Court case law.  The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only

if either the reasoning or the result contradicts the relevant Supreme Court cases.

<u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does

not even require awareness of our cases, so long as neither the reasoning nor the result

of the state-court decision contradicts them.").  Where there is no Supreme Court

precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  *See* <u>Woods</u>, 135 S. Ct. at 1377 (holding, as to claim that

counsel was per se ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for

> ordinary error correction through appeal."   Harrington, *supra*, at
> 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review

of the merits of the petitioner's claims. *See* <u>Panetti</u>, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

## III.    PETITIONER'S CLAIMS

### A.    Ground One: "Violation of Petitioner's Sixth Amendment Right to Effective Assistance of Counsel for Counsel's Failure to Investigate a Potential Witness."

Petitioner alleges she informed trial counsel, Attorney Ryan Mynard, about two defense witnesses, Monica Corley and Kevin Wilkson, who would have provided an alibi and confirmed her innocence (ECF No. 1 at 4–5). Petitioner alleges Monica Corley, Petitioner's sister, would have testified that Petitioner was not present and had no knowledge that she (Monica) was manufacturing methamphetamine in the bedroom they shared (*id.*). Petitioner alleges Kevin Wilkson would have testified that Petitioner was at work on the day law enforcement discovered methamphetamine in the residence shared by Petitioner, her sister, and Roy Kelly, Petitioner's boyfriend (*id.*). Petitioner alleges Attorney Mynard presented her with a plea offer and urged

her to accept it without investigating or deposing her sister or Mr. Wilkson (*id.*).

Petitioner alleges Attorney Mynard's failure to investigate "greatly prejudiced the

outcome of her case" (*id.*).

Respondent concedes Petitioner exhausted this claim in the state courts (ECF

No. 17 at 12).  Respondent contends the state court's denial of the claim was not an

unreasonable application of clearly established federal law (*id.* at 13–17).

### 1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set

forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under

Strickland, Petitioner must show (1) deficient performance by counsel and (2) a

reasonable probability that, but for counsel's deficient performance, the result of the

proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a

showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of Strickland is whether

counsel's assistance was reasonable considering all the circumstances and under

prevailing professional norms. Strickland, 466 U.S. at 688–89, 691. "The petitioner's

burden to prove, by a preponderance of the evidence, that counsel's performance was

unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir.

2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Professionally competent assistance includes a duty to conduct a reasonable investigation. <u>Strickland</u>, 466 U.S. at 690–91. The Supreme Court has emphasized that only when counsels' choices are made after a "thorough investigation of law and facts relevant to plausible options" are those choices "virtually unchallengeable." *Id.* at 690. When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Thus, at bottom,

"counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.   In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances. . . ." *Id.* at 691.  This means that when a court assesses the attorney's decision not to investigate, it "must consider . . . whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding.  *Id.* (citation omitted).   And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. Williamson v. Fla. Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112).

In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

2.      Federal Review of State Court Decision

Petitioner presented this claim as Ground One of her second amended Rule 3.850 motion (Ex. E at 23–25).  In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the Strickland standard (*id.* at 80).  The court adjudicated the claim as follows:

> In Ground One, Defendant claims that counsel was ineffective for failing to investigate Monica Corley (her sister and co-defendant) and Kevin Wilkson (her then-employer) as potential witnesses for trial.  The Court finds that Defendant has not demonstrated that counsel's performance was deficient.  Defendant failed to call either Corley or Wilkson as witnesses at the limited evidentiary hearing.  As such, the Court finds that Defendant's allegations regarding how Corley or Wilkson would have testified at trial are purely speculative.
>
> Additionally, at the limited evidentiary hearing, counsel testified to the following.  Defendant provided counsel with three alibi witnesses: Corley, Wilkson, and Roy Kelly (her then-boyfriend).  When he contacted Corley's attorney, counsel was told that Corley would not be made available for a deposition and that she would not be able to offer any testimony that would be helpful to Defendant.  He tried to call Wilkson several times, but he never got a response.  When he deposed Kelly, Kelly indicated that Defendant and Corley lived in the trailer, that they shared the bedroom where the methamphetamine was located, and that they were manufacturing methamphetamine in that bedroom.[FN 3: Evidentiary Hearing Transcript, pp. 13–16, 18.]  To the extent that counsel's testimony conflicted with Defendant's testimony, the Court finds counsel's testimony to be far more credible than Defendant's testimony.

(Ex. E at 52–53).  The First DCA affirmed the decision without written opinion (Ex. H).

At the post-conviction evidentiary hearing, Petitioner testified she asked Attorney Mynard to investigate Monica Corley and Kevin Wilkson as defense witnesses (Ex. E at 63–66).  Petitioner testified that Ms. Corley, her sister, was incarcerated with her for a period of time (*id.*).  Petitioner testified that when she asked Mynard about whether he spoke to these potential witnesses, he "just kept blowing me off" (*id.*).  Petitioner testified that she recalled Attorney Mynard visiting her at the jail once, and when he otherwise talked to her it was for one minute in the courtroom (*id.*).  Petitioner testified that if Attorney Mynard had spoken to Ms. Corley and Mr. Wilkson, she would not have entered the plea and instead would have gone to trial (*id.*).

On cross-examination, Petitioner admitted that she told law enforcement that she shared a room with her sister at 826 Mayo Trail (Ex. E at 67–69).  Petitioner admitted she also gave law enforcement a key to the room and consented to a search of it (*id.*).

Attorney Mynard testified that during the pendency of Petitioner's case, Petitioner asked him to investigate Monica Corley and Kevin Wilkson as defense

witnesses (Ex. E at 70–76). Attorney Mynard testified that Monica Corley was charged as a co-defendant in trafficking methamphetamine (*id.*). Mynard testified he contacted Ms. Corley's counsel, and counsel told him that Ms. Corley was not available for deposition (*id.*). Mynard testified he asked Ms. Corley's counsel if she would be able to offer any testimony helpful to Petitioner's defense, and Ms. Corley's counsel responded that she would not (*id.*). With regard to Mr. Wilkson, Attorney Mynard testified he attempted to call Wilkson three times, but Wilkson never responded (*id.*). Attorney Mynard testified he conducted pre-trial depositions in the case (*id.*). Mynard testified he deposed Roy Kelly, who Petitioner identified as her boyfriend (*id.*). Attorney Mynard testified that Mr. Kelly stated during his deposition that Petitioner and Ms. Corley were manufacturing methamphetamine in the bedroom they shared (*id.*).

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); *see also* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S.

Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843,74 L. Ed. 2d 646 (1983); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").  Questions of the credibility and demeanor of a witness are questions of fact.  *See* Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  "The deference compelled by the AEDPA requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations."  Nejad v. Attorney, 830 F.3d 1280, 1292 (11th Cir. 2016) (internal quotation marks and citation omitted).  Instead, "[i]n the absence of clear and convincing evidence, [courts] have no power on federal habeas review to revisit the state court's credibility determinations."  *Id.* (emphasis in original) (citation omitted).

Here, the state court reasonably concluded that Petitioner failed to demonstrate that Attorney Mynard performed deficiently with respect to his investigation of potential defense witnesses.  Mynard attempted three times to contact Mr. Wilkson, but Wilkson failed to return counsel's calls.  Ms. Corley's counsel would not make her available to testify due to her own pending legal charges, and her counsel stated that she would not be able to offer any testimony that would be helpful to Petitioner. Moreover, Mr. Kelly would not have provided testimony favorable to the defense.

Petitioner failed to demonstrate that the state court unreasonably determined the facts or unreasonably applied <u>Strickland</u> in adjudicating Petitioner's claim.  Therefore Petitioner is not entitled to federal habeas relief on Ground One.

> B.    <u>Ground Two:  "Violation of Petitioner's Sixth Amendment Right to Effective Assistance of Counsel for Counsel's Misadvice and Coercion for Defendant to Accept Plea Offer."</u>

Petitioner alleges she entered the plea agreement under duress, specifically, her pregnancy, the death of her mother, and the death of her baby's father (ECF No. 1 at 5–6).  Petitioner further alleges she entered the plea because Attorney Mynard insisted that she enter it and refused to investigate her defense (i.e., that her sister, Monica Corley, was person responsible for manufacturing methamphetamine) (*id.*).  Petitioner alleges Attorney Mynard told her, "You are in a rock and a hard place [sic], one of

you [referring to Petitioner and her sister] are going to lose, so sign the plea or go to trial." (*id.*).

Respondent concedes Petitioner exhausted this claim in the state courts (ECF No. 17 at 17).  Respondent contends the state court's denial of the claim was not an unreasonable application of clearly established federal law (*id.* at 18–20).

    1.  Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162–63, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, 566 U.S. 133, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  Lafler, 132 S. Ct. at 1387. The two-part Strickland test applies to claims that counsel was ineffective during the plea process. Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill, 474 U.S. at 48 (applying

<u>Strickland</u>'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances." <u>Strickland</u>, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann</u>, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." <u>Hill</u>, 474 U.S. at 56–57 (quoting <u>McMann</u>, 397 U.S. at 771). Under this standard, representation is ineffective

only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

As previously discussed, in the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

> 2.    Federal Review of State Court Decision

Petitioner presented this claim as Ground Two of her second amended Rule 3.850 motion (Ex. E at 25–26).  The state circuit court adjudicated the claim as follows:

> In Ground Two, Defendant essentially claims that counsel was ineffective for coercing her to accept the State's plea offer.  The Court finds that Defendant has not demonstrated that counsel's performance was deficient.  At the limited evidentiary hearing, counsel testified to the following.  Defendant had time to consider the plea offer.  Counsel discussed the plea offer with Defendant at least once at the jail prior to her court date.  They had a lengthy conversation about it.  He probably did tell her that she had to take the plea offer or go to trial; those were her two options at that point.  He believed the plea offer would be revoked if she did not take it.  He did not force her to take the plea offer or tell her that she had no other choice or that she had to sign the plea agreement.  He actually believed that they were going to trial.  It is always his client's decision whether to plea.  He gives his advice, and his client makes the decision.[FN 4:  Evidentiary Hearing Transcript, pp. 16–19.]  As previously stated, to the extent that counsel's testimony conflicted with Defendant's testimony, the Court finds counsel's testimony to be far more credible than Defendant's testimony.

> Additionally, during the plea colloquy, Defendant made the following statements under oath:  she went through the plea agreement with counsel; she understood what was happening; she understood that she was waiving her right to a jury trial; she was satisfied with counsel's

> work; counsel had answered any questions she had; counsel explained
> to her that seven years was a mandatory sentence that [the] Court was
> required to impose; through negotiations with the State, the charge was
> reduced; and she believed accepting the plea offer was in her best
> interest.[FN 5:  Exhibit C, pp. 2–5.].

(Ex. E at 81).  The First DCA affirmed the decision without written opinion (Ex. H).

The written plea agreement was part of the state court record (Ex. E at 85–89).

Petitioner affixed her signature immediately after the following Acknowledgment at

the conclusion of the plea agreement:

> By signing this Plea and Sentencing Agreement, I, the undersigned
> defendant in this case, agree that I have read and understand the contends
> of this document, and, if represented by an attorney, that I have
> discussed with my attorney all of the ramifications or consequences of
> entering a plea of guilty or nolo contendere to these charges. . . .  If
> represented by an attorney, I am satisfied with the attorney's advice and
> services, and my attorney has not compelled or induced me to enter into
> this plea agreement by any force, duress, threats, pressure or promises.

(Ex. E at 88).

Also by signing the plea agreement, Petitioner agreed that the arrest warrant,

offense report, or probable cause affidavit provided a factual basis for the plea (Ex.

E at 88).  According to the probable cause affidavit, Mr. Henry Price told Sergeant

Michael Rader, an officer with the local sheriff's office, that he observed Monica

Corley manufacturing methamphetamine at a trailer on Mayo Trail, where Corley

lived with Petitioner and "Roy" (Ex. A at 17).  Sergeant Rader spoke to Roy Kelly,

who stated that he lived a 826 Mayo Trail, Lot #2 with Corley and Petitioner (*id.*).
Mr. Kelly consented to a search of his bedroom and the common area of the trailer
(*id.*).   Sergeant Rader entered the trailer and observed precursor chemicals and
equipment used to produce methamphetamine in the dining room and in an open
hallway closet (*id.*).  The door to the other bedroom (not Mr. Kelly's) was locked with
a padlock (*id.*).  Sergeant Rader contacted Petitioner and advised her of her <u>Miranda</u>
rights (*id.* at 18).  Petitioner agreed to speak with Rader (*id.*).  Petitioner told Rader
that she shared a room with Ms. Corley in the trailer at 826 Mayo Trail, Lot #2 (*id.*).
Petitioner stated that "Roy" also lived in the trailer, but had a separate bedroom (*id.*).
Petitioner told Rader that she and Ms. Corley "stopped by" their trailer earlier in the
day (*id.*).  Petitioner consented to Rader's search of her bedroom and gave Rader the
key to the padlock (*id.*).  Sergeant Rader returned to the trailer and searched the
bedroom with the key Petitioner provided (*id.*).  Rader observed numerous items used
in manufacturing methamphetamine, a cooking vessel containing liquid, and "finished
product" (*id.*).  Rader discovered documents in the room which bore Ms. Corley's
name and Petitioner's name (*id.*).  The liquid in the cooking vessel was tested by the
Florida Department of Law Enforcement, and identified as 297 grams of

methamphetamine (*id.*).    The "finished product" was also identified as methamphetamine (*id.*).

During the plea hearing, Petitioner stated, under oath, that she reviewed the plea agreement with Attorney Mynard (Ex. E at 90–97).   Petitioner stated that she understood that the case was set for trial, but she chose to enter a plea to a reduced charge (*id.*).  Petitioner told the court she was satisfied with Mynard's work on the case (*id.*).  The court asked Petitioner if she believed it to be in her best interest to waive her rights, and Petitioner responded, "Yes, sir." (*id.*).   The court asked Petitioner if she had any questions, and Petitioner stated that she understood the proceedings (*id.*).  The court found that Petitioner knowingly and voluntarily entered the plea, and noted that Petitioner was "very effectively represented" by Attorney Mynard (*id.*).

At the post-conviction evidentiary hearing, Petitioner testified that she learned of the plea offer just minutes prior to commencement of the proceedings on August 8, 2014 (three days before trial) (Ex. E at 64–65).  She testified she felt rushed into the plea (*id.*).  On cross-examination, Petitioner testified as follows:

> Q [by the State].  How exactly did Mr. Mynard force you to sign the plea agreement?  You were present in court, correct, when it was announced, this offer has been made or you can go to trial; were you not?

A. Right.

Q. And you opted to take the plea to the lesser included offense because what you were charged with was a 15 year minimum mandatory, correct?

A. Correct.

Q. So you chose not to go to trial?

A. Yeah. Well, he was like—I mean there was only like a one minute thing, you know. And he was like—he said, well, you're kind of in a rock and a hard place. And he said if we take it to trial one of you all are [sic] going to lose. And my sister was sitting right there in front of me, you know. And he said, well, no, it's inevitable one of you all are [sic] going to lose. And he said, when you do lose and he pointed to her, he said, and whichever one loses is going to get 15 and she is looking at 50 years and he pointed to her. I mean I don't know who did it. I never even entered that place.

Q. When your sister—your sister was also charged; she is your co-defendant, correct?

A. Right.

Q. She was represented by an attorney. Were you aware that that attorney would not let her speak, would not let her give a statement to protect her rights?

A. No one ever told me anything about anything. Like I said, I don't ever remember the lawyer ever even coming to see me.

Q. Ma'am, on the day you entered your plea, when the Judge was asking you questions along the lines of, is this what you want to do, you know, you have the right to go to trial and you said, yes, that's what you wanted to do; were lying [sic]?

A.  No, I wasn't lying.  But when someone is sitting there saying, well, one of you all are [sic] going to lose and, you know, I mean.

Q.  So when you were asked the question was—were you entering the plea voluntarily or were you coerced into entering the plea, and you said, no, you weren't coerced; did you lie to the Court?

A.  I don't know—I don't understand exactly what you're saying.

Q.  When the Judge asked you, were you doing this voluntarily; were you coerced in any way into entering this plea and you said, no, was that a lie?

A.  Well, other than him, you know, saying you either take it or one of you all are getting 15 years.  I mean that's kind of—I mean, I don't—

Q.  When the Judge was asking about your plea, whether it was free and voluntarily, you never mentioned any of those things you're mentioning today, did you?

A.  I never had a chance to.

(Ex. E at 67–69).

With respect to the plea offer, Attorney Mynard testified as follows:

I know I discussed it with her at least once in jail prior thereto.  I don't know how much—I don't recall how much time she had to consider it in terms of when I went to see her, but I know I went to see her prior to the court date and she—it was emotional for her.  She was upset.  She did have a lot on her plate.  She had a child while she was in jail, so.  But she did have time—we had a lengthy conversation about it.

Q [by the State].   And is she accurate when she said that her options were basically to enter a plea or go to trial?   We had issued subpoenas, correct?

A.  We did.  I—I probably did tell her, you know, it's either take this plea offer or we're going to go to trial.  That was her two options at that point.

Q.  Because the State had offered her she [sic] was charged with a 15 year min/man.  We had offered her a plea to a lesser included for the seven years, is that correct?

A.  That's correct.  I believe that offer was going to go away if she did not take it.

Q.  Yes, sir.  But you did not force her to take the plea or tell her she had no other choice?

A.  No.  I always—it's always my client's decision.  I give them my advice and they make the decision.

(Ex. E at 73–74).

On cross-examination, Attorney Mynard testified he visited Petitioner at the jail approximately three time (Ex. E at 74).   Attorney Mynard testified he did not recall making the statements that Petitioner said he made in the courtroom during the plea discussions (*id.* at 76).   Mynard testified he never told Petitioner she had to sign the plea agreement; and in fact, he truly believed the case was going to trial (*id.*).

Petitioner has not rebutted the state court's credibility determination with clear and convincing evidence; therefore, the federal court must defer to the determination

that Attorney Mynard's testimony was credible. Based upon Attorney Mynard's credible testimony, as well as Petitioner's acknowledgments in the plea agreement (i.e., that she discussed all of the consequences of entering a plea with Attorney Mynard, that she was satisfied with his advice and services, and that he had not compelled or induced her to enter into the plea agreement by any force, duress, threats, pressure, or promises), the state court reasonably applied <u>Strickland</u> in concluding that Petitioner failed to show that Attorney Mynard performed deficiently during the plea process. Petitioner is not entitled to federal habeas relief on Ground Two.

> C.    <u>Ground Three: "Violation of Petitioner's Sixth Amendment Right to Effective Assistance of Counsel for Counsel's Failure to Request Downward Departure and Present Mitigating Evidence."</u>

Petitioner alleges she had experienced a complicated pregnancy, the death of her mother, and the death of her baby's father (ECF No. 1 at 6–7). She alleges she was "confused, grieving, and also suffering afflictions associated with her Bipolar mental disorder" (*id.*). Petitioner contends Attorney Mynard was ineffective for failing to present the court with these mitigating circumstances and request a downward departure sentence (*id.*).

Respondent concedes Petitioner exhausted this claim in the state courts (ECF No. 17 at 20–21). Respondent contends the state court's denial of the claim was not an unreasonable application of clearly established federal law (*id.* at 21–23).

### 1. Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

### 2. Federal Review of State Court Decision

Petitioner presented this claim as Ground Three of her second amended Rule 3.850 motion (Ex. E at 34–35). The state circuit court adjudicated the claim as follows:

> In Ground Three, Defendant claims that counsel was ineffective for failing to request a downward departure sentence and present mitigating evidence in support of such a sentence. The Court finds that Defendant has not demonstrated that counsel's performance was deficient. Based on Defendant's plea to the lesser-included offense of trafficking in methamphetamine (28 grams or more, but less than 200 grams), the Court did not have the discretion to impose a sentence below the seven-year minimum mandatory term mandated by section 893.135(1)(f)1.b., Florida Statutes (2013). *See, e.g., Rochester v. State*, 140 So. 3d 973, 975 (Fla. 2014).

(Ex. E at 82). The First DCA affirmed the decision without written opinion (Ex. H).

This federal court must abide by the state court's interpretation of state law. *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). In

light of the state court's determination that the sentencing court did not have discretion to impose a sentence below the seven-year statutory minimum mandatory, the state court reasonably concluded that Petitioner failed to show that Attorney Mynard performed deficiently by failing to present mitigating circumstances and request a downward departure.  Additionally, because the seven-year sentence was mandated by statute, Petitioner failed to show a reasonable probability that the sentencing court would have imposed a less harsh sentence if Attorney Mynard had presented mitigating evidence and requested a downward departure.  Therefore, Petitioner is not entitled to relief on Ground Three.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327).  Here, Petitioner cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>16th</u> day of May 2018.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**